[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by plaintiff Margaret Pescatello ("plaintiff") and plaintiff City of New London from a decision of defendant Planning and Zoning Commission of the Town of Waterford ("Commission") denying the plaintiff's application for a special permit to erect a commercial radio tower pursuant to Section 23 of the Town of Waterford Zoning Regulations ("Zoning Regulations").
 I FACTS
On November 16, 1992, the Commission received the plaintiff's application for a special permit to erect a commercial radio tower. The tower was to be erected on an elongated parcel of land, totaling 4.44 acres, belonging to plaintiff City of New London and leased to the plaintiff. The parcel of land is designated as "open space" and is bordered on the north by I-95 and on the south by an R-20 moderate density residential area. The parcel contains a 40 foot water tower which, until recently, was screened from view by existing trees and vegetation.
The plaintiff's proposal included a 199 foot high steel FM radio with nine guy wires and three anchors, an equipment shed, an eight-foot high chain link fence with barbed wire top surrounding the tower and shed, a 170 foot gravel drive, clearing of existing vegetation and installation of minimal landscaping consisting of ten three-foot high arborvitae. The base of the tower was to be located 100 feet from abutting property lines, with some guy wires anchored within approximately twenty feet of such lines.
The commission held a public hearing on the plaintiff's application for a special permit on December 7, 1992, which was continued to December 14, 1992, and again to January 25, 1993.
At the December 7, 1992, hearing, the plaintiff presented CT Page 7818 testimony regarding the specifications and construction of the tower, as well as the danger and extent of possible tower failure. The neighboring landowners also offered their views of the proposed tower. The landowners raised questions concerning loss of property value, aesthetics, health effects and the safety of children.
At the January 25, 1993, hearing, the landowners submitted articles regarding the health effects of electromagnetic fields, a letter from a local real estate broker which asserted that the tower would adversely affect the real estate market and a petition from ninety-four local residents against the proposed tower. The plaintiff presented an appraisal of comparable property values and testimony regarding safety rules governing the minimum height of FM antennae.
The Commission members individually visited the site of the proposed tower prior to rendering their decision.
On February 22, 1993, the Commission denied the plaintiff's application on the grounds that: the tower is inconsistent with the town land use plan under § 23.5.1 of the zoning regulations; it is inconsistent with the orderly development of the neighborhood under § 23.5.2; it will have a negative effect on property values under § 23.5.3; and it is impossible to provide suitable landscaping and buffering under § 25.5.6.
The plaintiff challenges the Commission's decision on the grounds that it acted illegally, in excess of its authority, erroneously, arbitrarily, and capriciously.
 II SCOPE OF JUDICIAL REVIEW
When ruling upon an application for a special permit a planning and zoning commission acts in an administrative capacity. Double I Limited Partnership v. Planning ZoningCommission, 218 Conn. 65, 72 (1991). The basic rationale for the special permit is that while certain land uses may be generally compatible with the uses permitted as of right in a particular zoning district, their nature is such that their precise location and mode of operation must be individually regulated because of the particular topography, traffic CT Page 7819 problems, neighboring uses and other aspects of the site.Whisper Wind Development Corp. v. Planning ZoningCommission, 32 Conn. App. 515, 519 (1993), aff'd 229 Conn. 176
(1994). A zoning commission has no discretion to deny a special permit if the regulations and statutes are satisfied.Felsman v. Zoning Commission, 31 Conn. App. 674, 678 (1993).
The Supreme Court stated in DeBeradinis v. ZoningCommission, 228 Conn. 187, 198 (1994):
 Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached. (Internal quotation marks omitted.)
In applying the law to the facts of a particular case, the commission is endowed with a liberal discretion and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal. Double I LimitedPartnership v. Planning Zoning Commission, supra, 218 Conn. 72. The burden of proof to demonstrate that the commission acted improperly is on the plaintiff. Adolphson v. ZoningBoard of Appeals, 205 Conn. 703, 707 (1988).
It is well settled that a court, in reviewing the actions of an administrative agency, is not permitted to substitute its judgment for that of the agency or to make factual determinations on its own. Connecticut Resources RecoveryAuthority v. Planning Zoning Commission, 225 Conn. 731, 744
(1993).
 Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The trial court has to decide whether the board correctly interpreted the section [of the regulations] and CT Page 7820 applied it with reasonable discretion to the facts.
Double I Limited Partnership v. Planning Zoning Commission, supra, 72 (internal quotation marks omitted).
"Where a zoning authority has expressed the reasons for its decision, a reviewing court may only determine if the reasons given are supported by the record and are pertinent to the decision, and the authority's action must be sustained if even one of the stated reasons is sufficient to support it."Connecticut Health Facilities, Inc. v. Zoning Board ofAppeals, 29 Conn. App. 1, 10 (1992) (internal quotation marks omitted). The evidence upon which the reasons are based must be "substantial," which is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. DeBeradinis v. Zoning Commission, supra, 228 Conn. 199-200.
 III DISCUSSION
General Statutes § 8-2 (a) provides that special permits may be granted "subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values." An applicant must satisfy all the conditions provided by municipal regulation before a special permit can be granted.Whisper Wind Development Corp. v. Planning ZoningCommission, supra, 32 Conn. App. 521. Despite compliance with technical requirements, a special permit can be denied on the basis of regulations that are general in nature. Id., 520-21.
The plaintiff argues that the Commission acted unlawfully, in excess of its authority, erroneously, arbitrarily, capriciously and in abuse of its discretion. The plaintiff maintains that the Commission's decision was not reasonably supported by the facts because her proposal was consistent with the land use plan since it leaves the property substantially unaltered and so retains its character as a buffer between I-95 and the abutting neighborhood. The plaintiff further maintains that her proposal will not impact future development since the neighborhood is already CT Page 7821 completely developed. The plaintiff also contends that a use that is allowed as a special permit is presumptively not adverse to the orderly development of the neighborhood. Furthermore, the plaintiff maintains that the proposed use will not have an adverse affect on local property values and that the Commission must rely on expert testimony in regard to property values. Lastly, the plaintiff argues that the Commission's finding that it is impossible to provide suitable landscaping is inconsistent with the regulations allowing a tower with a special permit.
The Commission found that the proposed use did not meet § 23.5.1 of the zoning regulations, which requires that a proposed use be consistent with the purpose and intent of the town plan, because it will have a "negative impact on the desirability of [the] area for housing." As noted above, the plaintiff responds that the surrounding property is already developed and, therefore, its character is established and her plan leaves the property substantially as is, thereby retaining its character as a buffer.
The parcel in question is designated as "open space-recreation" which abuts an R-20 moderate density residential neighborhood. The Town of Waterford Land Use Plan sets aside open space areas for "basically non-development purposes." The Commission noted that the designation of this parcel as open space recognizes its value as a buffer between I-95 on the north and the residential area to the south. The plaintiff, in her proposed findings, recognized this as well. The Commission found that limiting development on this parcel preserves its value in limiting the noise and the visual impact from I-95. Furthermore, in the abutting moderate density area the land use plan recommends that "only residential land uses be accommodated within these areas." At the public hearing, it was noted by a local resident that "[w]e have zoning rules to preserve the character and the nature of the neighborhood," and that the tower would affect the "character and certainly the appearance of the neighborhood." This was echoed by another local resident who stated that the proposed tower is "certainly not in harmony with the neighborhood."
The tower itself would be set 100 feet back from the property line with the concrete anchors set 80 feet out from the base of the tower. Additionally, the plaintiff's proposal CT Page 7822 calls for an equipment shed, an eight-foot high chain link fence topped with barbed wire surrounding the tower and the shed and a 170 foot gravel drive with a parking area.
The Commission concluded that construction of such a structure would "have a negative impact on the desirability of this area for housing." This decision reflects the concerns raised by the local residents at the public hearing and a local real estate broker. The record indicates that the members of the Commission visited the site. It is permissible for commission members to rely on their own personal knowledge and observations in coming to a determination. Dram AssociatesPlanning Zoning Commission, 21 Conn. App. 538, 542
(1990). Moreover, "a finding of inconsistency with the plan is sufficient to support a commission decision." Aiudi v.Plainville Planning Zoning Commission, Superior Court, Judicial District of Hartford/New Britain at New Britain, Docket No. 455059 (January 14, 1994, Berger, J.). The record supports a factual basis for concluding that the proposed use is not consistent with the town land use plan.
The Commission also denied the plaintiff's application on the basis of § 23.5.2 of the Zoning Regulations in that "[t]he location, type, character, and size of the proposed use is not in harmony with the appropriate and orderly development of the neighborhood or town, and that as proposed the use will hinder and/or discourage the appropriate development or use of the adjacent property." The plaintiff argues that since an antenna is expressly allowed in the zone with a special permit it cannot adversely affect the zone and that the Commission had no facts upon which to base its conclusion. The Commission responds that there is an adequate factual basis in the record to support its conclusion.
The plaintiff relies on TLC Development, Inc. v. Planning Zoning Commission, 215 Conn. 527, 532-33 (1990), in which the court stated that "`[t]he designation of a particular use of a property as a permitted use establishes a conclusive presumption that such use does not adversely affect the district . . .'" The proposed antenna, however, is not simply a permitted use, but a permitted use subject to a special permit, which requires that the proposed use "`must satisfy standards set forth in the zoning regulations themselves as well as conditions necessary to protect the public health, safety, convenience and property values . . . .'" Mobil Oil Corp.CT Page 7823v. Zoning Commission, 30 Conn. App. 816, 819 (1993) (emphasis added). Furthermore, the plaintiff's argument was expressly rejected by the Appellate Court in Whisper Wind DevelopmentCorp. v. Planning Zoning Commission, 32 Conn. App. 515, 521
(1993), aff'd, 229 Conn. 176 (1994), in which the court stated that the commission's power to stipulate restrictions "`necessarily implies the power to withhold its approval of the proposed use in its entirety if the commission finds that the circumstances warrant that action.'"
The Commission's decision stated that "[t]he location of the proposed tower and associated guy wires within close proximity to the abutting residential uses is inconsistent with the orderly development of the neighborhood." Concerns were raised at the hearing regarding the proximity of a structure of this size to the neighboring houses and yards, that it was not aesthetically pleasing and that it would be more suitable in a commercially zoned area. The Commission relied on the impact of the tower on the future desirability of the neighborhood for residential use, concern about which was voiced by the local residents.
The Commission noted that the plaintiff's comparative appraisal of property values in relation to existing radio towers did not include areas which reflected the same density of development as exists in the subject neighborhood and that the plaintiff's appraiser agreed that "some people don't like them and would not like to live next door to one." Additionally, a letter from a local real estate broker stated that:
 [e]ven though the design criteria call for tower remains to fall within 30' to 100' in the event of collapse, this will not be the perception of the real estate buying public. Both the possibility of tower collapse and the non-aesthetic [sic] appeal will limit the number of buyers for particular properties in close proximity to the tower area. This in turn will have an adverse impact on these particular real estate values and increase the length of time for any specific property to be on the market.
There are adequate facts in the record to support the Commission's decision that a structure of this size is not CT Page 7824 consistent with the orderly development of the neighborhood.
Section 23.5.3 of the Zoning Regulations requires that "[t]he proposed use will not depreciate adjacent property values and the size and height of all proposed buildings and the extent of all proposed site improvements shall both be such as to harmonize with the existing character of the neighborhood in which such use is to be established." The Commission determined that use of the property for a radio tower would depreciate property values and that evidence regarding the adverse health effects of electromagnetic fields on children, while inconclusive, was not harmonious with the existing residential use of the neighborhood. The plaintiff contends that the proposed use would not have an adverse effect on property values and that the Commission's decision was improper because it did not rely on expert testimony.
As noted above, the local residents voiced concerns over property values because of the size and proximity of such a structure in relation to a dense residential community and its lack of aesthetic appeal. The Commission also pointed out that the appraisal by the plaintiff's real estate expert did not reflect communities of similar density or in similar proximity to a tower and that the towers appraised were in existance [existence] [existence] and, thus, were already reflected in the neighboring property values. The Supreme Court has stated that one of the main purposes of zoning is the maintenance of property values and that there "is obviously a direct relationship between the appearance of the neighborhood in which property is situated and the value of that property, because most people will pay more for what pleases them visually." Builders Services Corp.v. Planning Zoning Commission, 208 Conn. 267, 308-9 (1988).
The plaintiff also argues that it was improper for the Commission to rely on anything other than the expert testimony presented by the plaintiff. However, the plaintiff's view would reduce the "hearings to a nose count of experts . . . [and would make] irrelevant all other testimony . . . from numerous neighbors." Kaeser v. Conservation Commission, 20 Conn. App. 309,314 (1989). Commission members need not rely on expert testimony regarding real estate markets and may rely on their own knowledge or on testimony by others. Dram Associates v.Planning Zoning Commission, supra, 21 Conn. App. 542. Lay members of commissions may rely on their personal knowledge, concerning matters readily within their competence, such as CT Page 7825 traffic congestion, street safety and local property values.Feinson v. Conservation Commission, 180 Conn. 421, 427 (1980).
The Commission in this case heard from local residents, received a letter from a real estate broker and heard testimony from the plaintiff's appraiser. "Furthermore, on factual issues material to the reasons for the commission's decision, the credibility of witnesses is within the province of the commission." Whisper Wind Development Corp. v. Planning Zoning Commission, supra, 32 Conn. App. 523. Therefore, it was within the discretion of the Commission to determine the persuasiveness of the testimony offered.
The residents also submitted information regarding electromagnetic fields and their health effects and the plaintiff provided testimony regarding the minimum safe height of a transmitter of this power to limit the exposure to such fields. The plaintiff's expert testified that the proposed tower easily satisfied federal regulations, but he did not directly address health concerns. The Commission found such evidence "inconclusive," but determined that its very uncertainty rendered it inharmonious with a residential neighborhood. There is an adequate basis in the record to support such a conclusion.
The Commission also denied the plaintiff's application on the basis of § 23.5.6 of the Zoning Regulations, which requires suitable landscaping to buffer the site from adjacent single-family residentially zoned properties. The Commission concluded that it would be "virtually impossible to provide suitable landscaping to protect the neighborhood and adjacent property from the impacts of the tower due to its height and proximity to the residences to the south." The plaintiff contends that since an antenna is permitted with a special permit it is inconsistent to find that it is "impossible" to provide suitable landscaping.
The Commission heard concerns of the local residents and the town planner regarding buffering and landscaping a tower of this size. The consensus was that there was no way to hide a structure such as this from public view. Furthermore, as noted above, the Commission members toured the site and, therefore, are permitted to "rely on their own knowledge and observations." Dram Associates v. Planning ZoningCommission, supra, 21 Conn. App. 542. The Commission's CT Page 7826 decision was reasonably based on facts found in the record.
 IV CONCLUSION
For the reasons stated above the plaintiffs' appeal is dismissed.
Hendel, J.