## STEINER, INC. *v.* TOWN PLAN AND ZONING COMMISSION OF THE TOWN OF FAIRFIELD

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued October 5—decided November 21, 1961

*Thomas J. Dolan,* with whom, on the brief, was *Albert L. Coles,* for the appellant (plaintiff).

*John J. Darcy,* for the appellee (defendant).

BALDWIN, C. J. The plaintiff has appealed from a judgment of the Court of Common Pleas sustaining the action of the town plan and zoning com-

mission of Fairfield in denying the plaintiff's application for a change of the zonal classification of a certain parcel of its land. At the public hearing held on April 27, 1960, by the commission on the application, valid protest petitions by owners of nearby properties were filed against the proposed change. See General Statutes § 8-3, as amended by Public Acts 1959, No. 614, § 3. This made it necessary that the proposed change be adopted "by a vote of two-thirds of all the members of the zoning commission." Ibid. The charter of the town of Fairfield makes provision for a town plan and zoning commission "consisting of seven voting members." 26 Spec. Laws 1162, § 5. Following the public hearing on the plaintiff's application, the commission met in executive session. There being an unfilled vacancy due to the resignation of a commissioner, only six commissioners were present. On a motion to approve the application, the vote recorded was four in favor and two opposed. The chairman of the commission ruled, in effect, that an affirmative vote of two-thirds of the entire authorized membership, or of five members, was required. The application was accordingly denied.

The question decisive of this appeal is whether the phrase "a vote of two-thirds of all the members of the zoning commission," as used in § 8-3, means two-thirds of the incumbents, as claimed by the plaintiff, or two-thirds of the number of members authorized by the charter, as found by the court. A zoning commission exercises, primarily, a legislative function. *State* v. *Huntington,* 145 Conn. 394, 399, 143 A.2d 444; *Florentine* v. *Darien,* 142 Conn. 415, 431, 115 A.2d 328. The object of zoning is to adopt measures to regulate property uses in conformance with a comprehensive plan in a manner

to advance the public welfare. See *Langbein* v. *Board of Zoning Appeals,* 135 Conn. 575, 580, 67 A.2d 5; *Devaney* v. *Board of Zoning Appeals,* 132 Conn. 537, 539, 45 A.2d 828. This process embodies a clash between the common-law right of man to use his property as he pleases, so long as he does not create a nuisance, and the exercise of the police power to regulate that use in the interest of the public health, safety, morals and general welfare. *Service Realty Corporation* v. *Planning & Zoning Board of Appeals,* 141 Conn. 632, 635, 109 A.2d 256; *State* v. *Hillman,* 110 Conn. 92, 105, 147 A. 294. This consideration must be borne in mind as we seek the legislative intent expressed in § 8-3.

Because zoning legislation is in derogation of private rights, the legislature in this state has made provision for advertised public hearings, the filing of petitions of protest and other safeguards to guarantee a full and fair consideration of any original enactment or subsequent change of zone boundaries or regulations; § 8-3; *Strain* v. *Mims,* 123 Conn. 275, 280, 193 A. 754; and to afford protection to property owners against changes to which they object. *Warren* v. *Borawski,* 130 Conn. 676, 681, 37 A.2d 364. Strict compliance with the statute is a prerequisite to zoning action. *State ex rel. Capurso* v. *Flis,* 144 Conn. 473, 481, 133 A.2d 901, and cases cited therein; *Treat* v. *Town Plan & Zoning Commission,* 145 Conn. 136, 139, 139 A.2d 601. The provisions of the statute must be construed in a way to afford just protection to threatened rights of individual property owners as well as to further the public interest. *Service Realty Corporation* v. *Planning & Zoning Board of Appeals,* supra, 638; *Langbein* v. *Board of Zoning Appeals,* supra; *Strain* v. *Mims,* supra.

In *Strain* v. *Mims,* supra, we considered language of similar import in § 425 of the Revision of 1930. It required that if a protest was filed by adjoining property owners, no change in zone boundaries or regulations could be made "except by unanimous vote of the zoning authority if such zoning authority is a zoning commission, or a vote of three-fourths of all the members of any other such zoning authority." Although it was not necessary for us to decide the point, we said that where a proper protest was filed no change would become effective unless the whole membership of the zoning commission voted in favor of it. Id., 282. In that case, the matter was discussed not because of a vacancy in the commission but because one member was absent. In 1951, the majority required in all zoning authorities, if a protest was filed, was fixed at three-fourths; Cum. Sup. 1951, § 157b; Cum. Sup. 1955, § 375d; it was further reduced to two-thirds in 1959. Public Acts 1959, No. 614, § 3.[1] The language of § 8-3 is significant. An amendment, change or repeal of zone boundaries or regulations can be made by "a majority vote of the commission, except as otherwise provided" in the chapter on zoning. The exception obtains if a sufficient protest is filed; no change can then be made "except by a vote of two-thirds of all the members of the zoning commission." § 8-3. The difference in phrasing between the procedure provided for the ordinary situation and the exceptional one is too clear to be ignored. It manifests a legislative intent to give the additional protection afforded by the vote of two-thirds of a definite and constant number. To construe the statute as the plaintiff claims, that is,

[1] See Hearings before the Joint Standing Committee on State Development, General Assembly, 1959 Sess., p. 192.

to require only two-thirds of the incumbents instead of two-thirds of the authorized membership, would mean, in the event of a vacancy, that a change could be made by a mere majority of the authorized membership of the commission or, if there was more than one vacancy, by even less, despite the protests of a qualified percentage of owners of adjacent property. If vacancies occurred and remained unfilled, the neighboring property owner would be deprived of the protection which the statute obviously purports to afford to him.

We hold that any action of the commission to amend, change or repeal zone regulations or zone boundaries requires, when a proper protest is filed under § 8-3, an affirmative two-thirds vote of the authorized membership of the commission. A like result has been reached in other jurisdictions. *Streep* v. *Sample,* 84 So. 2d 586, 588 (Fla.); *Clark* v. *North Bay,* 54 So. 2d 240, 242 (Fla.); *Dombal* v. *Garfield,* 129 N.J.L. 555, 556, 30 A.2d 579; *Ross* v. *Miller,* 115 N.J.L. 61, 64, 178 A. 771; *Schermerhorn* v. *Jersey City,* 53 N.J.L. 112, 116, 20 A. 829; see generally 62 C.J.S. 768, § 404(f); note, 43 A.L.R.2d 698, 709.

The plaintiff argues that this interpretation could seriously hamper the effective operation of the commission because vacancies could be left unfilled and thus the necessary number of affirmative votes could not be obtained. Ample provision, however, is made by the Fairfield charter for the speedy filling of any vacancy; 26 Spec. Laws 248, No. 368, § 4; and by a general statute. § 7-107.

There is no error.

In this opinion the other judges concurred.